The Chancellor.
The ground taken by the bill is shortly this: that the bond and mortgage were given as collateral security for the notos ; that there was as absolute and final delivery of the bond and mortgage to the bank, in completion of an agreement to give then', as collateral security for the notes ; that after such delivery, J. W. Reckless, or some person for him and in his name and by his authority, under the plea or pretence of procuring the assignment to the complainants of a policy of insurance on the premises and the assent of the insurance company to that assignment, procured the bond and mortgage from the complainants, with the full understanding and belief of the complainants that they were to be returned to the complainants when the object for which they were taken, was accomplished ; that the mortgage was returned ’to the complainants, but that J. W. Reckless at all times thereafter refused to deliver up the bond to the complainanio.
From this statement we should conclude that the matter of insurance, and of the assignment of the policy to the complainants, wore no part of the arrangement contemplated by the parties; that the bond and mortgage had bees delivered.to *444 ¡and received by the complainants absolutely and finally; that :the transaction as contemplated was completed ; and that J. W. Reckless, or some person for him,'by a pretence, cheated the •bank out of the possession of the bond and mortgage, and afterwards returned the mortgage to the bank, but refused to deliver up the bond to them. The cashier of the bank, sworn as a witness for the complainants, says that the complainants’ solicitor read the bill of complaint to him, and that, as he recollected them at that time, the facts therein stated were correct.
The testimony of the cashier is the only evidence produced in support of the allegation in the bill of the delivery of the bond and mortgage; and if it stood uncontradicted it would be very meagre evidence of a delivery of the papers, in the legal .sense of the word, and in the sense in which the word is used in the bill, even by the son, and much more insufficient evidence of such a delivery by the authority of the grantors. The ¡statement, made by the cashier in his testimony is essentially variant from the case uiade by the bill; and the effect of this vaiiance is not avoided by his saying, in his testimony, that the facts stated in the bill were correct as he recollected them .at the time the complainants’ solicitor read the bill, to him. Instead of an absolute delivery of the bond and mortgage, and the subsequent obtaining of the possession of them by the mortgagor or his son on a pretence, and the return of the mortgage to the complainants, which is the case made by the bill,, the cashier, when sworn in the cause, shows that it was a part of the understanding, and a condition on which the mortgage was to be taken by the bank, that the property should be insured and the policy assigned to the bank; that the papers were returned by him, the cashier, to Anthony Reckless, for the purpose of having them recorded and that the policy of insurance might be transferred to the bank; that the president of the bank directed that J. W. Reckless should be at the trouble and expense of recording the papers as well as preparing them ; and that the hank, afterwards, obtained possession of the mortgage ■from the clerk’s office, .without asking the consent of the mortgagors, or either of them, or any person acting for them, J. W. Reckless having possession of the bond, and he, or his son acting for .him, having long before refused to deliver the bond.
*445 This is-a.remarkable failure of testimony to support the case .made by the bill. Aud if we could give to this testimony all the weight it would be entitled to if the hill (prepared on advisement with this witness as to the facts, as he himself states,) had stated the facts as they are stated by the cashier in his testimony, the testimony is insufficient to show a completion of the arrangement and a delivery of the papers thereupon. If the .papers were ever in the- cashier’s hands after they were -executed, they were in com píete, according to t.bc cashier’s own .account of what the arrangement was; the policy had not been transferred ; and all the papers were handed back to A. Reckless for the purpose of having them completed, by the procure.ment by the mortgagor of a transfer to the bank of the policy of insurance, and, the cashier says, to he recorded ; the president having directed that J. W. Reckless should be at the trouble and expense of recording the papers.
It ¡=eems to me it would be to indulge in great latitude in aid of the bank, the complainants in the cause, and who are therefore to make out their case affirmatively, to say that, notwithstanding the papers were so handed back to A. Reckless for such purpose, and with such directions, the previous possession of the papers by the cashier is now to be considered as a pos-session on an absolute and final delivery.
Again, whether the arrangement was that the bond and mortgage were to be substituted for the notes, or were to be merely collateral security, it was an arrangement which J. W. Reckless might make or decline to make, at his pleasure, and on such terms as he pleased. And if the papers were handed back to him, with a requirement that he should have them, or the mortgage, recorded at his own .expense, he was at perfect liberty to decline doing so, and to refuse to deliver the papers. Nay, if he had afterwards sent the mortgage to the clerk’s office to be recorded, yet unless he left it with the clerk with such directions as would amount to a delivery to the bank, he could at any time take back the mortgage from the clerk and refuse .to deliver the papers, either with or without reason. The arrangement contemplated was purely voluntary on his part.
The case made by the bill is not sustained. And the facts *446 stated by the cashier in his testimony, are not sufficient, in my judgment, to show a delivery.
But if a delivery could be affirmed by the court on the testimony of the cashier- uncontradicted, it is but the testimony of a single witness, in opposition, to the positive denial of the answer. And so far from finding-circumstances equivalent to another witness, in corroboration of the allegation of delivery, the circumstances, and the general features and outline of the case, are strongly in corroboration of the answer. And, beyond this, -the testimony of the cashier, if he means to say there was a delivery, in the legal sense of that word in this respect, is contradicted by the very person who, the cashier says, gave the papers to him, and to whom he returned them.
It was -said on the argument on the-part of the complainants, that there were discrepancies between the answer of the defendant and the testimony of A. Reckless; and the court was asked, for that reason, to disregard the answer altogether, and-to give no weight to its denial of -delivery. I see no greater discrepancies between the answer and the testimony of A. Reckless than there are between the bill and the testimony of the cashier. Besides, discrepancies in.incidental-matters between the answer and a witness called to support it, cannot overcome the denial of the answer of the material allegation of the bill. And in this case, the material allegation of the bill denied by the answer, that is- to say, the delivery, is contradicted by the witness called in support of the answer, ■ the person who is alleged to have made the delivery, and thus the denial of the delivery made in the answer is supported. The zeal of counsel might prompt the idea that both the answer and the witness in support of it should be disregarded in this case;.but the court cannot see any thing in the case to call for such a sacrifice; much less to make such a sacrifice on the testimony of a single witness for the complainants,-giving, in his testimony, an essentially different version of the case from that given in the bill drawn under his advisement-as to the facts. I know of no reason for giving to the testimony of a witness standing in the position of this witness, any more potency than is allowed to the testimony of any other single witness in opposition to an answer. But in this case the court is asked to break down, not only the answer. *447 but the testimony of a witness in full support of it, on the single testimony of the cashier of the bank. I do not see that the complainants can reasonably expect this.
Next, the bank allege, in their bill, that the bond and mortgage were to be given as collateral security for the notes. And, as the case stands, it would be necessary for the bank to sustain this position affirmatively if they could have prevailed on the other point.
Now, the recital of the mortgage is as follows: !£ Whereas Joseph W. Reckless, of the first part, is justly indebted>to the said party of the second part in the sum of three thousand six hundred dollars, secured to be pair! by a certain bond or obligation bearing even date with these presents, in the penal sum &c., conditioned for the payment of the said first mentioned sum of three thousand six hundred dollars, on or before the 5th day of March which will be in the year of our Lord 1842, with lawful interest from the date thereof, to be paid half-yearly, &c.” The bond and mortgage were dated March 5th, 1841. Ail absolute bond, then, was drawn for three thousand six hundred dollars, and a mortgage to secure the bond. Nothing was said about the notes, or that the bond and mortgage were merely additional security, cither-in the bond or in the mortgage.
There was no obligation resting on Reckless to give a bond and mortgage at all. The bank had the notes and indorsements on which they loaned their money. And no object or motive can be perceived to induce .Reckless to give a bond and mortgage for the amount due on the notes, except that of relieving his indorsers, by taking up the notes. It is hardly conceivable that Reckless would be willing to give an absolute bond and mortgage for three thousand six hundred dollars, full and complete evidence of indebtedness to that amount, beyond the amount of the notes, and leave the notes with the bank, and subject himself to the hazard of proving or failing to prove that they wore for the same debt. No prudent man would do so in a transaction with an individual: and we are not to presume that Reckless, or any other person, would have more confidence in a corporation than in an individual.
'Witli these remarks in view, we shall not be surprised to find that the effort on the part of the bank to sustain the position *448 they take oh this part of the case is weak, and the testimony" on which they rely entirely unsatisfacloiy.
The bill, after stating the notes, says, that, for the better" securing the same, and as collateral security therefor, J. W.Reckless executed his bond for three thousand six hundred dollars, the amount of said notes, ¿-nffi the mortgage in question,to secure the" bond and the bill says, the,complainants insist that “ as the mortgage was given as security for the payment of the notes, their right in such security is good and perfect independently of the bond, which was not- the evidence of the debt, but merely designated the amount for which security was’ given.”
The testimony on'the part of-the complainants may be sufficient to show that the bank intended to get the bond and mortgage and retain the notes too; but it is insufficient to show that Mrs. Reckless consented to such an arrangement, and stili more' insufficient to show that J. W.-Reckless consented to it. The two portions-of the testimony relied on by the complainants to show that Mrs. Reckless consented to such an arrangement are as follows. • The cashier says, that Mrs. Reckless called on him, and wished to know if the bank would" not take a mortgage to secure the amount due-on the notes, and until Mr. Reckless should be able to raise the money to take up the notes.Does the cashier mean to say that the last clause, “ to take up the notes,” was the language of Mrs. Reckless? And if it was, and the" whole sentence together is to be taken, from the language of a woman in distress, to mean that a bond and mortgage were to be given as collateral security for the notes, yet the bond and mortgage were not so drawn ; and there is nothing to show that she consented to the delivery of an absolute bond and mortgage, making no reference to the notes. Matthias Bruen, in his testimony, says, that Mrs. Reckless, in her conversation with him, appeared to be in great distress, and said that she would secure the claim of the bank. These are the only two clauses in the testimony on which the allegation of the complainants, that the bank were to have this absolute bond and mortgage, and retain the notes too, and that Mrs. Reckless consented to it, rests. Their insufficiency for such a purpose is, if eoesas fo me, apparent
*449 But what is the testimony relied on to show that J. W. Reckless ever consented to such an arrangement ? It is as follows. The cashier says, the understanding of the ’bank and Mr. Reckless was, that the bank should retain the notes also; and that the bond and' mortgage were taken as collateral security. Where did the cashier get his authority for saying that it was the understanding of Mr. Reckless that the bank should retain the notes 1 Mr. Reckless was confined to iris house by sickness during the whole period of the negotiation, and until it was broken off; and it is not pretended that the cashier saw him wiriiin that period. Matthias Brucn, in his testimony, says, that at the time the bank acceded to the proposal, it was understood expressly that the notes were to be retained by the bank, and tlie bond and mortgage were as additional secHiity. By whom was it so understood ? This witness has before said tb^fcMrs. Reckless proposed to him that she would secure the claim-of the bank; that lie told her ho would lay the case before the board ; that he did bo, at their next moating, and they agreed to take a bond and mortgage as collateral security for the notes. It is apparent that, thus far, the witness says nothing more than that when Mrs. Brio proposal to secure ihe claim of the bank was laid before the board, ihe board agreed to fake a bond and mortgage as collateral security for the notes. There was nothing in the nature or language of Mrs. R,!s proposal to bind her, even if she had been a. single woman, by the agreement of the directors among themselves, to take a bond and mortgage as collateral. That was not the proposal of Mrs. Reckless. The witness then proceeds with this general remark: “ Such was the understanding, not only of Mr. Reckless and wile, but also of some of the indorsers on the notes.® Now, considering the confinement of Mr. Reckless by sickness, and that it does not appear that this witness ever spoke with Mr. Reckless on the subject, it is aching too much to ask the court to decree on such testimony, (it relating, too, to a time prior to the drawing of the mortgage,) that Reckless consented is deliver, and did deliver, an absolute bond and mortgage,, making no reference to the notes, and consented also to leave the notem and the indorsements thereon- with the bank.
But again, if such could have beers the original understand *450 ing of J. -W. -Reckless, before the papers were drawn, yet he . was under no obligation to carry out such an arrangement. . It will -not be contended that a bill would be sustainable to compel the performance' of such an agreement; and the mortgage, when afterwards drawn, being drawn simply to secure a bond, mentioned therein, J. W. Reckless not only had the right to say, but a regard for his own interest required him to-say, that the bond and mortgage, as drawn, should not be delivered unless the notes were given up. - And J. W. Reckless being sick, and his son attending to his business for him, it was the duty of the son to refuse to deliver the said- bond and mortgage unless the notes were given up; and he swears he did so refuse,- and I can see no reason for doubting it; It was his duty to refuse unless otherwise directed by his father, and of this there is no proof. And yet, in a case in which the complainants must have been well aware that a delivery of the papers could not have been compelled by the court, the court is asked to decree, on the evidence in this cause, that the papers were actually delivered ; and that the mortgage, taken by the complainants from the clerk’s office, long after the refusal of the son, acting for his father, to deliver the bond, (the bond, the principal instrument, being still in the possession of J. W. Reckless,) shall be decreed to be a valid security independent of the bond. I venture to say that no such decree was ever before asked on such testimony as is presented tou the- court in this case. _ .
It-seems there were other debts due from J. W. Reckless to-the bank, besides the amount secured by these notes with indorsers- This may account for the desire of the bank to get the bond-and mortgage in the shape in which they were, and retain the notes.
It Was said in the argument, that the possession of the mortgage was presumptive evidence of its delivery. -Whether the possession of a mortgage given to secure a bond, the bond remaining in the possession of the obligor, and he refusing to deliver it, would be any evidence of the delivery of the mortgage, is a question which it is not necessary to consider in this case. The possession of a deed by the grantee named therein, and the possession of a bond and mortgage by the obligee and *451 mortgagee, would be prima facie evidence of due delivery. But I am unable to perceive that the possession of a mortgage obtained from the clerk’s office, without the consent of the mortgagor, and after he had refused tQ deliver the bond to secure which the mortgage was drawn, has any potency whatever, or is entitled to any consideration'as evidence of a due delivery of the mortgage. The rule, that possession is presumptive evidence of delivery, has no application to such a state of things.
If it be asked why J. W. Reckless left the mortgage so long at the clerk’s office, the answer is plain. He had possession of the bond, the principal instrument; and had, as the bill states, and as A. Reckless, who attended to this business for J. W. Reckless, testifies, refused to deliver it. Could it be imagined that, under such circumstances, the bank, or their cashier, would send to the clerk’s office and get the mortgage. But 1 think it may be asked, with much more significancy, why the bank pursued the -coarse they did. After the refusal to deliver the bond, a long time, the cashier says in one place, three months ire says in another place, elapsed before he sent to the clerk’s office for the mortgage. The bank, certainly, could not have expected that possession of the mortgage so obtained, after the refusal to deliver the bond, would be sufficient evidence of the delivery of the mortgage. And that they did not so expect, the bill itself shows.
The bill says nothing of their getting the mortgage from the clerk’s office; but says the mortgage was returned to the complainants ; and the bill is framed entirely on the'charge that both bond and mortgage had once been delivered, absolutely, and that they were afterwards obtained from the bank on a pretence, and that Reckless afterwards refused to deliver up the bond. It has been before shown that the case made by the bill is not sustained. And the bank themselves seem to have had little confidence in the ground which, at a very late period, they assumed in the bill. They prosecuted the notes, obtained judgment, and caused execution to be issued and to 'be levied •on these very premises. It was said in argument, on the part of the defendants, and not denied, that it happened that another execution, issued on a judgment obtained by another creditor of J. W. Reckless, was recorded an hour or so before the *452 .execution in favor of the bank. The cause was argued for the .defendants by counsel in behalf of a judgment creditor other than the bank, which shows that his execution was ahead of ■that of the bank. It was not till after this state of things oc.curred that the bank filed their bill in this cause. It seems to me that the course pursued by the bank betrays an evident want of confidence in the idea that there had been a delivery .of the bond and mortgage, or that their obtaining the mortgage from the clerk’s office would help their case. And this want of confidence is apparent in the bill, and in the testimony of the cashier and Mr. Bruen.
The fact that the mortgage was recorded cannot, under the .circumstances of this case, aid the complainants. To consti.tute a delivery, even of a deed, a single instrument having no .connection with any .other, the grantor must part, not only with the possession, but with the control of the deed, and de.prive himself of the .right to .recall it: Dev. Eq. 14; C. W. Dud. Eq. 14.
If a deed be left by the grantor for .registry, the mere registration is not equivalent to a delivery. To make the leaving a deed, by a grantor, .with the clerk for registry, a good delivery to the grantee, it must be left by the grantor, or by his autho.rity, for the grantee: Rice's Eq. 244.
If, then, the mortgage was left with the clerk, by J. W. Reckless or by his authority, for the express purpose of bein'g recorded, which is denied both by -the answer and by the testimony of A., Reckless, who handed the mortgage to the clerk, •yet there is no evidence that the grantor left it, or authorized it to be left with the .clerk for the grantees, and that the grantor intended to part with the control of it.
Delivery is essential to a deed; and as the mortgage was taken from the clerk’s office by. the bank, or by the cashier for them, it is for the complainants to prove that it was left with the clerk in such manner and with such directions from the grantor as to amount to a delivery to them, or for their benefit, and authorize them to take it from the clerk: 5 Masons C. C. R. 60. There is no such evidence.
It will not be claimed that J. W. Reckless could not have taken the mortgage from the clerk’s office. Were any such .di *453 rections given to the clerk, when the mortgage was left with him, as would authorize him’to refuse to’return it to the person who gave it to him, or to J. W. Reckless? Certainly not. And the bond, to secure which the mortgage was drawn, was, when the mortgage was handed to the clerk, in the possession of J. W. Reckless or of his agent, and delivery of the bond was afterwards refused, and refused before the bank sent to the clerk’s office for the mortgage. And in a case like this the bank could acquire no right whatever to or in the bond and mortgage until an absolute and final delivery of them. I. W. Reckless or his wife, might object at the last moment to deliver them, either with or without a reason; and if they ever were willing that the bond and mortgage as drawn, should be delivered and the bank retain the notes, they were at liberty to change their mind at any time before the completion of the arrangement by a final delivery of the papers, .and to refuse to deliver them. There was no consideration binding them, or obligation resting upon them, either to substitute the bond and mortgage for the notes, or to give them as additional security for the notes. It was a matter resting simply in their will, and they could .change that will at the last moment. I do not see that it is possible that the.registry of the mortgage, under such circumstances, can afford the least aid to the complainants.
It is not a case of money advanced on securities claimed to have' been delivered. The bank have still the securities on which they lent their money. They sustain no loss by not being able to avail themselves of this bond and mortgage; they simply fail to obtain additional or substituted securities for a loan previously made on securities good, or thought by them to be good, when the loan was made.
It is unnecessary for me to make any observations as to the admissibility of the testimony of Mr. M. Bruen; or any animadversions upon it, or on the position in which his cross-examination places him. Taking his testimony as it is, the case, in my judgment, is clearly with the defendants. The bill must be dismissed.
Decree accordingly.